UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
MAURICE HALL,

                                    Petitioner,

                    v.                                    **REPORT AND**
                                                          **RECOMMENDATION**
WILLIAM PHILLIPS, SUPERINTENDENT
OF GREEN HAVEN CORRECTIONAL FACILITY          CV 04-1514 (NGG)(VVP)

                                    Respondent.
------------------------------------------------------------------x
POHORELSKY, Magistrate Judge:

        Judge Garaufis has referred to me for a Report and Recommendation, pursuant to 28

U.S.C § 636(b)(1), Maurice Hall's petition for a writ of habeas corpus, contesting his state court

conviction for the strangling death of Nancy McBride.  The petition, as construed by this court,

is based chiefly on three separate claims: first is a challenge to various aspects of the trial court's

jury instructions; second is an attack on the constitutionality of a pre-trial lineup; and third is an

ineffective assistance claim based on allegations that the petitioner's counsel failed to raise the

previous two arguments on direct appeal.  (*See* Pet. ¶ 13, at 6.)

        For the reasons discussed below, the undersigned respectfully recommends that the

instant petition be DENIED in its entirety.

**BACKGROUND**

On February 14, 2000, a unanimous jury found the petitioner guilty of murdering Nancy McBride in the course of committing a robbery. Specifically, the jury convicted the petitioner of (1) murder in the first degree, (2) burglary in the third degree, and (3) grand larceny in the fourth degree. After bringing numerous, unsuccessful state court motions to challenge the conviction, the petitioner sought habeas relief from this court. To the extent they are relevant in resolving the instant petition, the court sets forth the following facts, adduced from transcripts of the petitioner's trial and related proceedings, and from various submissions filed by the petitioner and respondent during state court proceedings and in this court.

**I.        Facts and Procedural History**

On January 31, 1998, at approximately 10:00 PM, Nancy McBride was killed in her Brooklyn apartment. The petitioner, an acquaintance of McBride, was seen in the vicinity of the victim's apartment on the night of the murder. Phone records indicated that at around 9:54 PM that same night, a call had been placed from McBride's apartment to the petitioner's apartment, one minute after someone had "paged" the petitioner from a number associated with his residence. In addition, a silver cross and chain were found in McBride's apartment after the murder. Those who knew McBride did not believe the chain belonged to her. It was later discovered from an old photograph that the petitioner had worn a similar cross and chain.

Various items were found missing from McBride's apartment after her death, including jewelry, clothing, a VCR, and keys to a car and clothing store owned by McBride. In the early morning hours following the murder, the petitioner was spotted outside McBride's store trying to gain access through a gate door. After doing so, the petitioner was seen shuttling between the

store and a nearby car resembling McBride's, which he used to store items taken from the store. A few hours after entering McBride's store, the petitioner made his way to his sister's apartment, where she resided with her boyfriend. There, the petitioner tried to sell his sister some jewelry, later discovered to be McBride's, but she refused.

The petitioner was indicted and arrested for the murder of McBride and other related crimes. The petitioner was convicted of (1) murder in the first degree under the felony murder provision, (2) burglary in the third degree, and (3) grand larceny in the fourth degree. He was sentenced to life in prison without parole for the first-degree murder charge, and, because of his status as a discretionary felony offender, to consecutive terms of twenty-five years to life on the burglary and larceny counts. The Appellate Division, Second Department, unanimously affirmed the conviction, *People v. Hall*, 753 N.Y.S.2d 903 (App. Div. 2003), and the Court of Appeals denied leave to appeal, *People v. Hall*, 99 N.Y.2d 654 (2003).[1]

The petitioner then moved the Appellate Division for a writ of error *coram nobis*, contending that he was deprived effective assistance of appellate counsel. This claim was based on the allegation that counsel failed to raise various issues on appeal, including (1) the trial court's failure to instruct the jury on all the elements of third degree robbery; (2) an erroneous reasonable doubt instruction; and (3) an unconstitutional lineup procedure in which the petitioner was forced to shave prior to attending the lineup. (*See* Resp't Aff. Opp'n Pet. ¶ 14.) The Appellate Division denied the motion, concluding that the petitioner failed to prove that counsel was ineffective under the standards set forth in *Jones v. Barnes*, 463 U.S. 745 (1983). *People v.*

_____

[1]The petitioner raised three issues on direct appeal; namely, that (1) the prosecution failed to prove beyond a reasonable doubt that he had murdered McBride in the course of committing a robbery, (2) the verdict of guilt on the first degree murder charge was against the weight of the evidence, and (3) the sentences were excessive. (*See* Resp't Aff. Opp'n Pet. ¶ 11.)

*Hall*, 767 N.Y.S.2d 833 (App. Div. 2003). The Court of Appeals denied leave to appeal. *People v. Hall*, 1 N.Y.3d 597 (2004).

On April 5, 2004, the petitioner filed a habeas petition containing the same claims he raised on direct appeal as well as those in his *coram nobis* application. On September 28, 2004, Judge Garaufis granted the petitioner leave to withdraw his habeas application so he could file additional motions in state court. The petitioner was directed to re-file his habeas petition at the conclusion of his post-conviction proceedings to the extent he could not obtain a favorable result.

On September 29, 2004, the petitioner filed a second motion for writ of error *coram nobis* in the Appellate Division, again challenging the effectiveness of appellate counsel. The petitioner's theory this time around centered on an alleged deviation from the procedure for appointment of appellate counsel under section 35-b of the Judiciary Law – a provision which applied to the petitioner's situation. Because of this deviation, the petitioner argued, the attorney ultimately appointed to him was constitutionally ineffective, having failed to raise various issues on appeal such as (1) the constitutional infirmity of the first degree murder charge because the underlying felony in this case, third degree robbery, did not require proof of physical injury; (2) the flawed nature of the trial court's "elemental instructions"; and (3) the failure of the trial court to give the jury an "expanded supplemental charge." The Appellate Division denied the motion on the ground that the petitioner again failed to establish appellate counsel's ineffectiveness

under *Jones v. Barnes*, 463 U.S. at 745. *People v. Hall*, 786 N.Y.S.2d 312 (App. Div. 2004).

The Court of Appeals denied leave to appeal. *People v. Hall*, 4 N.Y.3d 799 (2005).[2]

The petitioner next sought to vacate his conviction pursuant to New York's Criminal

Procedure Law 440.10 focusing on the propriety of a lineup he participated in prior to trial. In

his 440.10 motion, the petitioner argued that his constitutional rights were violated when he was

ordered to shave and wear a hat before being allowed to participate in the lineup. This

involuntary change in appearance, the petitioner argued further, also violated the trial court's

lineup order. The Honorable Anne Feldman, the judge who presided over the petitioner's trial,

denied the motion (*see People v. Hall*, Indictment No. 11336/98 (Sup. Ct. July 25, 2005)

(decision and order on application), Resp't Ex. M), and the Appellate Division denied leave to

appeal (*see People v. Hall*, No. 2005-8264 (App. Div. Nov. 14, 2005) (decision and order on

application), *available at* http://www.courts.state.ny.us/reporter/motions/11-14-2005_

MOTION_LIST.htm#M31672b).

---

[2]While not particularly relevant to disposition of the present habeas claims, the court notes that the petitioner's leave letter regarding the denial of his second *coram nobis* petition omitted one ground that had been used to support his ineffective assistance claim; namely, appellate counsel's failure to challenge the "constitutional infirmity" of the first degree murder charge. (*See* Resp't Aff. Opp'n Pet. ¶¶ 21, 22.)

## II.    The Petitioner's Claims

On March 25, 2005, the petitioner re-filed his habeas application.[3]  The petition sets forth

six grounds for which habeas relief is sought.[4]  The court recites them here taking care to

preserve the numerical order in which they were asserted in the petition.  In the first ground, the

petitioner alleges that his lawyer failed to raise otherwise meritorious claims on appeal.  The

second and third grounds attack the propriety of the jury instructions, the former alleging that the

trial court failed to instruct the jury on "all elements" of third degree robbery, the latter

concerning the legality of the reasonable doubt standard provided to the jury.  In the fourth

ground, the petitioner alleges that he was deprived his constitutional rights when the police

ordered that he shave and wear a hat prior to participating in a pre-trial lineup.  The fifth ground

challenges the appellate division's method for appointing the petitioner an attorney for his direct

---

[3]Because of the petitioner's *pro se* status, the court will construe the petition liberally in his favor.
*Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983) ("[D]ue to the pro se petitioner's general lack of
expertise, courts should review habeas petitions with a lenient eye, allowing borderline cases to proceed.
These views are wholly consistent with Supreme Court doctrine, which confirms that pro se complaints
must be liberally construed and their allegations accepted as true.") (citations omitted); *Carter v.
Perlman*, No. 03-CV-4200, 2006 WL 891089, at *3 (E.D.N.Y. Apr. 6, 2006) (citing *Chang v. United
States*, 250 F.3d 79, 86 n.2 (2d Cir. 2001)).

[4]In asserting these six grounds, the petitioner has, as respondent points out, apparently abandoned
several grounds that had been raised in his first petition but not asserted here, namely, those issues
relating to his direct appeal.  In any event, all the apparently abandoned grounds are either not cognizable
on habeas or otherwise meritless.  The challenges contesting the conviction as against the weight of the
evidence and the propriety of the sentence are not reviewable here.  *Cardena v. Giambruno*, No. 03-CIV-
3313, 2004 WL 239722, at *4 (S.D.N.Y. Feb. 10, 2004) (Sweet, J.) ("[C]hallenges to the weight of
evidence are not cognizable on federal habeas review.") (collecting cases); *Royster v. Senkowski*, No.01-
CV-2913, 2003 WL 21847107, at *4 (E.D.N.Y. July 29, 2003) (Weinstein, J.) ("The assertion that a
sentencing judge abused discretion in sentencing is generally not a federal claim subject to review by a
habeas court. A challenge to the term of a sentence is not a cognizable constitutional issue if the sentence
falls within the statutory range.  In this case, the sentence imposed did not exceed the maximum
prescribed by law.") (citations omitted).  The sufficiency of the evidence argument – that the prosecution
failed to prove the victim was murdered in the course of and in furtherance of a robbery – while
cognizable on habeas is, as demonstrated below, meritless.  *See* discussion *infra* pp. 14-15.

appeal, which the petitioner contends was not done according to the procedural requirements of section 35-b of New York's Judiciary Law. The sixth and last ground alleges that the petitioner suffered prejudice when his attorney failed to raise issues on appeal which could have resulted in a reversal of his conviction.[5]

## DISCUSSION

### I.     State Court Exhaustion

The exhaustion requirement prohibits the granting of an application for a writ of habeas corpus unless the petitioner has exhausted the remedies available in the courts of the state in which he or she was convicted, *see* 28 U.S.C § 2254(b)(1)(A); *Picard v. Connor,* 404 U.S. 270, 275 (1971); *Klein v. Harris,* 667 F.2d 274, 282 (2d Cir. 1981), and extends to every federal habeas claim alleged by the petitioner, *see Caballero v. Keane,* 42 F.3d 738, 740 (2d Cir. 1994) (citing *Rose v. Lundy*, 455 U.S. 509, 522 (1982)). In other words, the existence of *any* unexhausted claim in a habeas petition – a so-called "mixed petition" – requires dismissal of the entire petition. *Rose*, 455 U.S. at 522.

Proper exhaustion "requires . . . that state prisoners give state courts a *fair* opportunity to act on their claims." *O'Sullivan v. Boerckel,* 526 U.S. 838, 844 (1999) (citing 28 U.S.C. § 2254(c)) (additional citations omitted). Thus, a petitioner is not deemed to have exhausted the available state remedies if he or she has the right under state law to raise, by any procedure, the question presented. 28 U.S.C. § 2254(c). This has been interpreted by the Supreme Court to require the invocation of "one complete round of the State's established appellate review

---

[5]As explained in greater detail below, not all of these grounds constitute separate claims for habeas relief. *See* discussion *infra* Part III.C.

process," including an application to "a state court of last resort when that court has discretionary control over its docket." *O'Sullivan*, 526 U.S. at 843, 845.

Moreover, the exhaustion requirement is not satisfied until the petitioner has "fairly presented" the federal claim to the highest court of the state. *See Picard,* 404 U.S. at 275 ("We emphasize that [for purposes of exhaustion] the federal claim must be fairly presented to the state courts."). A claim may be "fairly presented" to the state courts if "the legal basis of the claim made in state court was the 'substantial equivalent' of that of the habeas claim." *Daye v. Att'y Gen. of New York*, 696 F.2d 186, 192 (2d Cir. 1982) (en banc) (quoting *Picard*, 404 U.S. at 278) (additional citations omitted). "This means, in essence, that in state court the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Id.*

In accordance with these principles, the court believes that the petitioner has failed to exhaust the second and third grounds of his petition where he contests various aspects of the jury charge. Those allegations were raised on the state level but only in the context of an ineffective assistance claim. As courts in this circuit have consistently recognized, an ineffective assistance claim is an insufficient vehicle for exhausting the underlying allegations when those allegations are asserted for the first time as separate claims on habeas. *See Bond v. Walker*, 68 F. Supp. 2d 287, 296 (S.D.N.Y. 1999) ("An ineffective assistance claim is separate and distinct from the substantive claim incorporated in the ineffective assistance claim, such that exhaustion of the ineffective assistance claim is not exhaustion of the underlying substantive claim."); *Reed v. Strack*, No. 97 CV 2513, 1999 WL 187422, at *3 (E.D.N.Y. Mar. 25, 1999) ("[R]aising the claim as part of an ineffective assistance of counsel claim did not exhaust petitioner's claim, made for

the first time in this court, that the trial violated his federal constitutional right to a public trial at which his family members could be present.") (citing *Levasseur v. Pepe*, 70 F.3d 187, 192 (1st Cir. 1995)) (additional citation omitted). This principle is firmly supported by the Second Circuit's recognition that "[a] court considering ineffective assistance might never reach the underlying constitutional claims, and the rejection of the ineffective assistance claims without detailed comment does not bespeak any necessary ruling on the underlying constitutional claims." *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (per curium).

The court need not decide whether these two grounds are, or are not, exhausted, however. Under 28 U.S.C. § 2254(b)(2), district courts are authorized to address the merits of a habeas application, despite non-exhaustion, if the inquiry results in a denial of the petition. The Second Circuit has not yet established a standard for triggering § 2254(b)(2) review. *See Brown v. State of New York*, 374 F. Supp. 2d 314, 318 (W.D.N.Y. 2005). The majority of courts in this circuit have followed a "patently frivolous" standard, *id.* (citing *Naranjo v. Filion*, No. 02-CIV-5449, 2003 WL 1900867, at *8 (S.D.N.Y. Apr. 16, 2003) (Peck, Mag. J.) (collecting cases)) (footnote omitted), while a minority have exercised § 2254(b)(2) discretionary review when " ' it is perfectly clear that the [petitioner] does not raise even a colorable federal claim,' " *see Hernandez v. Lord*, No. 00-CIV-2306, 2000 WL 1010975, at *4 n.8 (S.D.N.Y. July 21, 2000) (Peck, Mag. J.) (collecting and analyzing cases).[6]

---

[6]The legislative history provides only a modicum of guidance on the issue. *See, e.g.*, 137 Cong. Rec. S3191-02, 3220 (daily ed. Mar. 13, 1991) (statement of Sen. Thurmond) (stating that § 2254(b)(2) allows for district courts to deny an unexhausted petition on its merits when doing so "would avoid the waste of State and federal resources that . . . results when a prisoner present[s] a hopeless petition [and] is sent back to the State courts to exhaust State remedies.").

Since the grounds for which the petitioner seeks habeas relief, including those which the court believes are not exhausted, fail either standard, as they are both patently frivolous and entirely meritless, the court will proceed to address the petition on its merits.

## II. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified under 28 U.S.C. § 2254, requires that federal courts "entertain" applications of habeas relief "only on the ground that [a state prisoner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The primary significance of AEDPA resides in its mandate that federal courts apply a deferential standard of review for habeas claims that have been adjudicated on the merits in state courts. *See* 28 U.S.C. § 2254(d); *see also Eze v. Senkowski*, 321 F.3d 110, 120 (2d Cir. 2003) ("AEDPA changed the landscape of federal habeas corpus review by 'significantly curtail[ing] the power of federal courts to grant the habeas petitions of state prisoners.' ") (quoting *Lainfiesta v. Artuz*, 253 F.3d 151, 155 (2d Cir. 2001)) (additional citation omitted).

Under this narrow scope of review, a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was adjudicated on the merits in State court only if it concludes that the adjudication of the claim "resulted in a decision that was [1] contrary to, or involved an unreasonable application of, clearly established Federal law . . . or [2] resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). *Accord Rosa v. McCray*, 396 F.3d 210, 219 (2d Cir. 2005); *Castro v. Lewis*, 03-CV-5480, 2004 WL 2418319, at *2 (E.D.N.Y. Oct. 29, 2004) (Gleeson, J.) ("The Antiterrorism and Effective Death Penalty Act . . . has narrowed the

scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits.") (citation omitted). "A state court adjudicates a claim 'on the merits' for purposes of § 2254(d) when it '(1) disposes of the claim on the merits, and (2) reduces its disposition to judgment . . . even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.'" *Serrano v. Fischer*, 412 F.3d 292, 296 (2d Cir. 2005) (quoting *Gutierrez v. McGinnis*, 389 F.3d 300, 304 (2d Cir. 2004)).

### III. The Merits of the Petitioner's Claims

#### A. Jury Instruction Claim

The court turns first to the petitioner's contentions that the trial court failed to properly instruct the jury on third degree robbery, the offense underlying his felony murder charge, and the reasonable doubt standard as well. In doing so, it is worth repeating the oft-stated principle that " 'it is not the province of a federal court to reexamine state-court determinations of state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.'" *Davis v. Strack*, 270 F.3d 111, 123 (2d Cir. 2001) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)). To prevail on habeas, the petitioner must therefore " 'establish[] not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment.'" *Davis*, 270 F.3d at 123 (quoting *Cupp v. Naughten*, 414 U.S. 141, 146 (1973)). At bottom, "[t]he question is not whether the trial court gave a faulty instruction, but rather 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Id.* (quoting *Cupp*, 414 U.S. at 147) (additional citation omitted).

The Second Circuit has emphasized that "in order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law." *Id.* (citations and internal quotation marks omitted). Even under that principle, however, a habeas court should recognize "that errors under state law [can still] result in cognizable violations of a constitutional right to due process." *Id.* After all, as the *Davis* court cogently observed,

> What due process requires will often depend on what state law is. States are free to define the elements of, and defenses to, crimes. Once states have promulgated laws to define criminal conduct, however, federal due process protects a defendant from conviction unless he is shown in a fair proceeding to have violated those laws.

*Id.* (citations omitted). The jury instructions at issue here raise no concerns under state or federal law and thus foreclose any prospect of habeas relief.

First, the petitioner contends that the trial court should have instructed the jury on "all elements" of third degree robbery, which, as indicated above, served as the underlying offense for the felony murder charge. No such requirement exists under state law, especially when instructing a jury on a predicate offense. Nor does the court find any due process violation with how the trial court instructed the jury on the third degree robbery offense.

The New York Court of Appeals has explained that when a person is charged with felony murder, the underlying offense "is not so much an element of the crime but instead functions as a replacement for the *mens rea* or intent necessary for common-law murder." *People v. Berzups*, 49 N.Y.2d 417, 427 (1980); *accord Fauntleroy v. Artuz*, No. 00 CV 2209, 2005 WL 1899498, at *8 (E.D.N.Y. July 18, 2005). Consistent with this principle, New York state courts have, for

example, eschewed any requirement that the prosecution, when indicting felony murder, specify the degree of the predicate offense. *See People v. Colon*, 710 N.Y.S.2d 35 (App. Div.1st Dep't 2000) ("The felony murder count, which set forth every element of felony murder, was not rendered jurisdictionally defective by its lack of specificity as to the degree of burglary alleged to be the underlying act."); *People v. Adinolfi*, 672 N.Y.S.2d 432 (App. Div. 2d Dep't 1998) (rejecting claim of appellant who was convicted of felony murder with underlying offense of burglary and argued that felony murder statute was unconstitutionally vague because it did not specify the degrees of burglary which could constitute a predicate offense). Nor, significantly, is a felony murder conviction subject to reversal if the trial court chooses not to separately submit the predicate offense to the jury at all. *People v. Wroblewski*, 489 N.Y.S.2d 797, 802 (App. Div. 4th Dep't 1985) ("It is settled that a felony murder conviction may stand even if the underlying felony which serves as its predicate is not submitted to the jury.") (citing *People v. Scott*, 461 N.Y.S.2d 309, 311 (App. Div. 1st Dep't 1983)). It therefore follows that a felony murder jury instruction is fully consistent with the dictates of state law, and thus, due process, when the underlying felony is not specified by the trial court with exacting detail. *Cf. Bethea v. Artuz*, No. CV-95-2168, 1996 WL 622192, at *6 (E.D.N.Y. Oct. 22, 1996) (Sifton, J.) (on habeas review, trial court did not unconstitutionally amend indictment by charging jury with lowest degree of arson as underlying offense for felony murder count).

In any event, the jury instruction at issue is entirely proper. The trial court instructed the jury that, to be convicted of felony murder, the petitioner must have killed the victim "in the course of committing or attempting to commit and in furtherance of a robbery." (Trial Tr. 1342:1-2.) The court then went on to explain that "[a] person is guilty of robbery when he

forcibly steals property, and he is guilty of an attempted robbery when he forcibly – when he attempts to forcibly steal property."  (*Id*. at 1343:14-17.)[7]  The instruction tracked the language of the penal law, *see* N.Y. Penal Law § 160.05 ("A person is guilty of robbery in the third degree when he forcibly steals property."), and therefore presents no constitutional due process concerns.  *See Sams v. Walker*, 18 F.3d 167, 171 (2d Cir. 1994) (finding no violation of federal law where trial court's jury instruction that the victim's death "was caused in the course of an in furtherance of the crime of first-degree robbery" "faithfully tracked the language of New York's pattern criminal jury instructions.") (citations omitted).

More significantly, the felony murder conviction, including proof that the petitioner murdered the victim, Nancy McBride, in the course of committing a robbery, is supported by the record.  *See Wroblewski*, 489 N.Y.S.2d at 802.  Evidence adduced at trial, including call logs, physical evidence, and testimony from the victim's neighbors, places the petitioner within the temporal and geographic vicinity of McBride's murder.  Various possessions of McBride, including jewelry and keys to her car and clothing store, were missing from her apartment after

_____

[7]During deliberations, the jury submitted a note seeking "clarification on the difference between murder in the first degree and second degree.  Specifically, how the time of the robbery relates to first degree murder."  (Trial Tr. 1362:5-8.)  The trial judge responded to the note by essentially re-reading the charge for first degree murder but making the express distinction that while both first and second degree murder require an intentional killing, "first degree requires something additional.  That you find the victim was killed while the defendant was in the course of committing or attempting to commit and in furtherance of a robbery."  (*Id.* at 1369:3-10.)  This was seized upon by the petitioner in his state court brief as evidence of a defective jury instruction, a problem, the petitioner argued further, the trial court judge failed to remedy when he merely re-read the charge.  For present purposes, however, it should be emphasized that in conferring with the trial judge as to an appropriate response to the note, counsel for the petitioner never objected in any way to the jury instruction insofar as it might have lacked "all [the] elements" of the underlying offense.  Nor, as the court notes in passing, was it improper for the trial judge to have re-read the instructions in response to the jury note.  *See Grey v. Henderson*, 788 F. Supp. 683, 694 (E.D.N.Y. 1991) (Weinstein, J.) ("[T]he trial judge's repetition of the same language used in the initial charge when asked by the jury for further instructions on the law of felony murder and reasonable doubt does not render the charge unconstitutional.") (citing *Davis v. Greer*, 675 F.2d 141 (7th Cir. 1982)).

the murder. The petitioner was spotted entering McBride's clothing store shortly after the time she had been killed, and using the victim's car to store and transport merchandise taken from the store. Witnesses also testified that the petitioner sought to sell some of the items missing from McBride's apartment and clothing store shortly after the murder occurred. The petitioner's felony murder conviction is supported by the record and the court is satisfied that no due process violation occurred.

As for the contention that the trial court provided the jury with an erroneous reasonable doubt charge, the court finds habeas relief unwarranted on this point as well. State and federal habeas courts employ similar standards for determining whether a challenge to a reasonable doubt charge warrants reversal of a conviction. On the state level, courts assess the propriety of a reasonable doubt charge "not [by] consider[ing] the challenged sentence alone and in a vacuum but instead [by] read[ing] the instruction as a whole to determine if it was likely to confuse the jury as to the proper burden of proof." *People v. Fields*, 87 N.Y.2d 821, 823 (1995) (citations omitted). In the habeas context, the court reviews a contested reasonable doubt charge to determine whether it is "constitutionally infirm." *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997) (citing *Vargas v. Keane*, 86 F.3d 1273, 1280 (2d Cir. 1996)). To that end, the court's "task is to decide not simply whether the challenged instructions, standing alone, are erroneous or misleading, but rather whether it is 'reasonably likely' that the jury applied the wrong standard." *Id.* at 902-03 (citations omitted).[8]

---

[8]The Supreme Court has emphasized that a reasonable doubt charge that results in application of the incorrect standard is a " 'structural defect[] in the constitution of the trial mechanism,' " and cannot be subjected to a further harmless error analysis. *Sullivan v. Louisiana*, 508 U.S. 275, 281 (1993) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 309 (1991)).

Considered under these standards, the jury instruction at issue does not warrant habeas relief. The passage from the instructions that the petitioner challenges plays only a minor part in an otherwise extensive jury charge:

> [T]he constitutional required standard of proof in every criminal case is proof of guilt beyond a reasonable doubt. That standard does *not* require the prosecution to prove the defendant guilty beyond a reasonable doubt or possibility of doubt or beyond a shadow of a doubt. It requires the prosecution to establish guilt beyond a reasonable doubt.

(Trial Tr. 1351:15-21 (emphasis added).)

The alleged error, stating that, to secure a criminal conviction, the prosecution did *not* have to prove guilt beyond a reasonable doubt – whether a misstatement by the trial judge or typographical error by the stenographer – does not amount to the kind of error which might have caused the jury to apply an incorrect standard. Aside from that one-line remark, the trial judge clearly and uniformly reminded the jurors throughout the instructions that a criminal conviction required proof beyond a reasonable doubt.[9] Indeed, immediately after the contested portion of the charge, the trial judge instructed the jurors that,

> Before [you, the] jury may convict the defendant on any of the charges, each of you, twelve of you, must be satisfied by credible evidence as to that charge is sufficient to convince you beyond a reasonable doubt that the defendant [sic] guilty of it.

---

[9]For instance, when instructing the jury on the crimes the petitioner was charged with, the trial judge consistently admonished the jury that each element of the crimes charged had to be proven beyond a reasonable doubt. (*See, e.g.*, 1342:5-8 ("Whenever intent is an element of a crime charged, the burden is on the prosecution to prove that the defendant had the intent to commit the crime beyond a reasonable doubt."), 1343:18-22 ("In order for you to find the defendant guilty of murder in the second degree, the prosecution must prove, from all the evidence in the case, each and every one of the following elements, beyond a reasonable doubt."), 1344:15-20 ("On the other hand, if you find the prosecution has failed to prove, beyond a reasonable doubt, any one or more of these elements, then you must find the defendant not guilty of murder in the first degree, and you will on to the second degree."), 1347:8-11 ("In order for you to find the defendant guilty of grand larceny in the fourth degree, the prosecution must prove, from all the evident [sic] in the case, beyond a reasonable doubt, each of the following.").)

(*Id.* at 1351:22-1352:1.)  The trial judge then proceeded to a lengthy exposition on the meaning of reasonable doubt.  (*See id.* 1352:2-1353:6.)

As there is no doubt that the instructions as a whole were proper, habeas relief is not warranted on the jury instruction claim.

## B.        Pre-Trial Lineup Claim[10]

The petitioner seeks habeas relief by attacking the propriety of a court-ordered lineup he participated in prior to trial.  By way of background, on January 22, 1999, the trial court, pursuant to a motion by the prosecution, ordered the petitioner to participate in a lineup.  Among other things, the order, which was written, required that the petitioner himself "not alter or disguise his appearance in any way that would effect a change in his appearance," but authorized law enforcement officials "to shave or trim [the petitioner's] beard and/or trim or comb his hair," as a condition for participating in the lineup.  (Resp't Ex. K.)  The lineup procedure was subsequently scrutinized by the trial court in a routine *Wade* hearing.  Despite the petitioner's argument that the lineup was unconstitutional because he had been ordered to shave, thus exhibiting an appearance (clean shaven) in the lineup that was different than what he looked like, or what the perpetrator was described as looking like on the night of the murder (mustache or goatee), the trial court found no constitutional error in the lineup procedure.

The petitioner renews this argument here and brings some additional grounds to contest the validity of the lineup.  The court addresses these contentions in two parts; the first part deals with a state law argument which the court finds is not cognizable on habeas review, and in any

---

[10]While not pleaded with specificity in his habeas application, the particulars of this claim were briefed by the petitioner in his section 440.10 motion in state court, and it is from those papers the court reconstructs much of the petitioner's lineup claim.

event, meritless; the second part contains an analysis of various constitutional arguments raised in connection with the lineup.

### 1. Violation of the Trial Court's Order

The petitioner's contention that the police, by forcing him to alter his appearance, in some way violated the trial court's order is meritless. Fundamentally, the allegation deals exclusively with a matter of state, not federal, law, and is therefore not cognizable here. *See Estelle*, 502 U.S. at 68 ("[F]ederal habeas corpus relief does not lie for errors of state law.") (citing *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). *See also Collins v. Scully*, 878 F. Supp. 452 (E.D.N.Y. 1995) (barring federal habeas review of alleged violation of a state procedural law). While violations of state law may, in certain circumstances, give rise to a constitutional claim, this requires a rather substantial showing that the alleged violation impinged upon the due process rights of the petitioner. *Lisenba v. People of State of California,* 314 U.S. 219, 228 (1941) (refusing to review alleged violation of state law with respect to admission of evidence because the alleged violation did not "so infuse[] the trial with unfairness as to deny due process of law."). The petitioner has not presented any evidence that he was denied due process; nor has he made any suggestion as to how such a deprivation may have occurred.

The court, in any event, finds no violation of state law. Although the trial court's order barred the petitioner himself from "alter[ing] or disguis[ing] his appearance" before attending the lineup," that same order also provided law enforcement officials express permission to have the petitioner alter his appearance for purposes of the lineup, which included the requirement that the petitioner "shave or trim his beard and/or trim or comb his hair; and to wear an article or articles of clothing . . . ." (*People v. Hall*, Indictment No. 11336/98 (Sup. Ct. Jan. 22, 1999)

(lineup order), Resp't Ex. K.)  The police, therefore, acted within the bounds of the trial court's

order, and by extension, state law, when they required the petitioner shave and wear a hat before

entering the lineup, and any claim to the contrary is meritless.

### 2.     Alleged Constitutional Deficiencies of the Lineup

As construed by the court, the petitioner's attack on the constitutionality of the lineup is

essentially predicated on the Fourth and Fourteenth Amendments.  Neither ground warrants

habeas relief, however.

### a.     Fourth Amendment

The petitioner seems to argue that the lineup ran afoul of the Fourth Amendment because

it was conducted without probable cause.  This argument is not reviewable on habeas, and

therefore cannot provide petitioner the relief he seeks.

First, the petitioner never argued that the lineup was conducted without probable cause

on the state level.  This, in itself, is a sufficient reason to reject the petitioner's Fourth

Amendment argument here since he has failed to preserve it for habeas review.  *See Gates v.

Henderson*, 568 F.2d 830, 836 n.2 (2d Cir. 1977) ("We have held that failure to raise the

objection at the time required by s 813-d [later codified as N.Y. Crim. Proc. Law 710.40, the

provision governing when suppression motions are to be made] precludes raising the question on

the habeas corpus petition.") (citation omitted).

Second, the Supreme Court, in *Stone v. Powell,* 428 U.S. 465, 494-95 (1976), established

that Fourth Amendment claims are generally barred from habeas review.  In the Court's view, as

long as a criminal defendant is "provided an opportunity for full and fair litigation of a Fourth

Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the

ground that evidence obtained in an unconstitutional search or seizure was introduced at his

trial." *Id.* at 494.[11] "Full and fair litigation" is shown when the state has provided a "facially

adequate procedure" to litigate the Fourth Amendment claim, and when no "unconscionable

breakdown" of that procedure occurs. *Holmes v. Scully*, 706 F. Supp. 195, 201 (E.D.N.Y. 1989)

(citing *McPhail v. Warden, Attica Correctional Facility*, 707 F.2d 67, 70 (2d Cir. 1983))

(additional citations omitted).[12]

The Second Circuit has found New York's procedure for litigating Fourth Amendment

claims, set forth under section 710.10 *et seq.* of New York's Criminal Procedure Law, "facially

adequate." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992).[13] Therefore, federal habeas review

of a Fourth Amendment claim in this circuit is unwarranted unless a criminal defendant can

---

[11]The rationale for this principle stemmed from the *Stone* majority's recognition that allegations of Fourth Amendment violations, even if proven true, do not "impugn the integrity of the fact finding process or challenge evidence as inherently unreliable," *id.* at 479, a proposition that was vehemently criticized by a triumvirate of dissenting justices, *see id.* at 503-42 (Brennan, Marshall, White, JJ., dissenting). As Justice Brennan, author of one of the dissenting opinions, posited:

> It is one thing to assert that state courts, as a general matter, accurately decide federal constitutional claims; it is quite another to generalize from that limited proposition to the conclusion that, despite congressional intent that federal courts sitting in habeas must stand ready to rectify any constitutional errors that are nevertheless committed, federal courts are to be judicially precluded from ever considering the merits of whole categories of rights that are to be accorded less procedural protection merely because the Court proclaims that they do not affect the accuracy or fairness of the factfinding process.

*Id.* at 529.

[12]*See Serrano v. Walsh*, No. 04-CIV-8615, 2005 WL 3340578, at *7 (S.D.N.Y. Dec. 9, 2005) (citing *Graham v. Costello,* 299 F.3d 129, 134 (2002) ("[O]nce it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the [state] court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief.")).

[13]Section 710.20 of the Criminal Procedure Law sets forth various grounds upon which a criminal defendant may seek to suppress evidence, including identification testimony, seized or procured unlawfully by law enforcement. N.Y. Crim. Proc. Law 710.20. Section 710.40 governs the timing for filing and determination of any such motion. N.Y. Crim. Proc. Law 710.40.

show an "unconscionable breakdown" in the review process precluded him from filing a motion to suppress under section 710.40.  *Shaw v. Scully*, 654 F. Supp. 859, 864 (S.D.N.Y. 1987).  An "unconscionable breakdown" of the procedure occurs when no state court conducts a "reasoned method of inquiry into relevant questions of fact and law or any inquiry at all."  *Holmes*, 706 F. Supp. at 201 (quoting *Cruz v. Alexander*, 477 F. Supp. 516, 523 (S.D.N.Y. 1979)).

The record clearly indicates that the petitioner was provided an opportunity under New York's judicially-approved procedure to raise any Fourth Amendment objections he may have had concerning the lineup.  Indeed, the petitioner availed himself of such an opportunity when he participated in a *Wade* hearing, which focused on issues unrelated to the Fourth Amendment. The petitioner also attacked, albeit unsuccessfully, the propriety of the lineup in successive post-conviction motions.  (*See, e.g.*, Aug. 2003 Pet. for a Writ of Error Coram Nobis 14-15, Resp't Ex. F; 440.10 Mot. to Vacate 5-7, *available at* docket entry 16.)  It is clear then that the petitioner was given an opportunity to fairly and fully litigate his Fourth Amendment objections without having been affected by any unconscionable breakdown of the process; any attempt to raise those objections here must therefore fail.

### b.      Fourteenth Amendment – Due Process

The petitioner alleges that the lineup procedure was arbitrary, and thus, unconstitutional, because none of the participants in the lineup, himself included, resembled the perpetrator who witnesses described as having been bearded on the night of the murder.  This argument was raised at the end of the *Wade* hearing notwithstanding the prosecution's explanation that the petitioner was asked to shave because all the lineup fillers were shaven as well.  The petitioner disputes this rationale, however, and contends that the requirement served no other purpose than

to "satisfy the prosecutor and the police," especially since the perpetrator had been consistently described by witnesses as bearded rather than clean-shaven.  The proper procedure, the petitioner argues, would have been to construct a lineup with suspects and fillers who matched descriptions of the perpetrator rather than compel him to change his appearance in a manner that had no relation to those descriptions.

Even if the police acted arbitrarily, as the petitioner asserts, when they compelled him to shave his facial hair for the lineup, this does not necessarily give rise to a constitutional right meriting habeas relief.  When considering an allegation of improper police conduct in a lineup procedure, "the due process focus is principally on the fairness of the trial, rather than on the conduct of the police, for a suggestive procedure 'does not in itself intrude upon a constitutionally protected interest.' "  *Wray v. Johnson*, 202 F.3d 515, 524 (2d Cir. 2000) (quoting *Manson v. Brathwaite*, 432 U.S. 98, 113 n.13 (1977)).

"The erroneous introduction of lineup evidence," has therefore been classified as a "trial error" rather than a "structural defect."  *Id*. at 525.  The latter defies any kind of harmless error analysis, thus requiring automatic reversal.  Trial error, on the other hand, does not.  Rather, to warrant relief, trial error must be shown to have had a " 'substantial and injurious effect or influence in determining the jury's verdict.' "  *Id*. at 524-25 (citing and quoting *Brecht v. Abrahamson*, 507 U.S. 619, 629-30 (1993), *and Watkins v. Sowders*, 449 U.S. 341, 348 (1981)).[14]

---

[14]To be sure, there are instances when a constitutional violation emanating from lineup procedure contributes to an unjust conviction and thus becomes critical under habeas review.  For example, the due process rights of a defendant under the Fourteenth amendment are violated if the lineup procedure is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Ashby v. Senkowski,* 269 F. Supp. 2d 109, 117 (E.D.N.Y. 2003) (citing *Simmons v. United States,* 390 U.S. 377, 384 (1968)) (internal quotation marks omitted).  *See also Foster v. California,* 394 U.S. 440,

The petitioner makes no such showing here.  Nor can he.  Altering the petitioner's appearance to make him look more like the other lineup fillers, and less like the person described by witnesses, actually benefitted the petitioner by making the task of identifying him more difficult.  The trial judge recognized as much at the *Wade* hearing when she rejected a similar argument and found that "[e]verybody was clean-shaven, which means that your client [the petitioner] also being clean-shaven, does not affect the validity of the lineup."  (Wade Hr'g Tr. 27:3-6, Resp't Ex. J.)  Clearly then, the identification process was not skewed to the petitioner's disadvantage, and thus, could not have improperly influenced the jury's verdict.

To the extent the petitioner argues that he was prejudiced at trial because the jury could have inferred that he changed his appearance at the lineup in an attempt to prevent witnesses from identifying him, such a claim is similarly meritless.  A change in appearance can certainly "reflect[] an awareness of guilt and fear of identification." *United States v. McKinley,* 485 F.2d 1059, 1060-1061 (D.C. Cir. 1973) (citations omitted). The petitioner, however, presents no evidence to suggest that the jury drew such an inference.  Although the trial record does indicate that the jury heard testimony about the petitioner's appearance at the time of the lineup as well as the murder, and that his appearance was slightly altered (Trial Tr.  896, 939-41, 943-44, 946), the prosecution did not offer this testimony as evidence of consciousness of guilt.[15]  In fact, most of the questioning directed towards the witness with respect to the petitioner's appearance was done

---

442-443 (1969) (finding that lineup procedure violated petitioner's constitutional rights when a witness was exposed to a suspect who stood out in the lineup due to a difference in height, and when the suspect was shown in two different lineups).

[15]A witness, Mr. Frazier, said at various times that the man he saw at the victim's store possibly had a mustache and beard, and confirmed that at the lineup, the man he identified was clean shaven. (Trial Tr. 896, 939-40, 944).

by defense counsel, apparently in an attempt to flush out any inconsistency in the witness's description of the petitioner. The argument that the petitioner could have been prejudiced at trial because of an unintended inference of guilt is therefore not supported by the record. Accordingly, the petitioner's arguments contesting the constitutionality of the lineup are meritless, and habeas relief is not warranted.

### C. Ineffective Assistance of Appellate Counsel Claim

The court turns at last to the ineffective assistance of appellate counsel claim. Generally, to establish ineffective assistance, a litigant must show that counsel acted improperly and that such impropriety prejudiced the litigant – that is, the result of the trial would have been different but for counsel's alleged transgressions. *See Strickland v. Washington,* 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).[16] In his habeas application, the petitioner alleges each of the *Strickland* factors as separate grounds; namely, the first and sixth grounds. Construing the petition liberally, as it must, the court concludes that the first and sixth ground together constitute an ineffective assistance claim.

The petition suffers from an additional flaw, however: it fails to tie the ineffective assistance claim to any factual allegations – that is, it fails to demonstrate *how* counsel was ineffective. The absence of such allegations is fatal to an ineffective assistance claim on habeas. *See Rosario v. Bennet*, No. 01-Civ-7142, 2002 WL 31852827, at *32 (S.D.N.Y. Dec. 20, 2002) (Peck, Mag. J.) (citing *Parnes v. United States*, No. 94 Civ. 6203, 1995 WL 758805, at *3

---

[16]While *Strickland* and the principles emanating therefrom dealt initially with the constitutional sufficiency of trial counsel, its applicability has since been extended to inquiries relating to the effectiveness of appellate counsel. *See McKee v. United States*, 167 F.3d 103, 106 (2d Cir. 1999) ("The same [*Strickland*] standard applies to a review of the effectiveness of appellate counsel.") (citation omitted).

(S.D.N.Y. Dec. 21, 1995) ("[V]ague allegations do not permit the Court to conclude that the alleged error of Petitioner's counsel fell below 'prevailing professional norms' . . . . Accordingly, the Court rejects Petitioner's claim that he received ineffective assistance of counsel.")); *Hartley v. Senkowski*, No. CV-90-395, 1992 WL 58766, at *2 (E.D.N.Y. Mar. 18, 1992) ("In light of this demanding [Strickland] standard, petitioner's vague and conclusory allegations that counsel did not prepare for trial or object to errors carry very little weight."); *Matura v. United States*, 875 F. Supp. 235, 237-38 (S.D.N.Y. 1995) (denying § 2255 habeas petition, finding, in part, that "petitioner's claim that counsel failed to conduct an adequate investigation is entirely conclusory," and therefore, does not establish ineffective assistance.") (citations omitted).

Even construing the petition in such a way as to avoid this result, i.e., dismissal on the basis of vagueness, the ineffective assistance claim still fails. The only grounds in the petition which could serve as underlying factual allegations are those which have already been rejected by the court as meritless, namely grounds two through four.[17] The law in this circuit is clear that when the underlying claims themselves are found to be meritless, the ineffective assistance claim is meritless as well. *See United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999) ("Failure to make a meritless argument does not amount to ineffective assistance."); *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995) ("[T]he failure to make a meritless argument does not rise to the level of ineffective assistance.") (citing *United States v. Javino*, 960 F.2d 1137, 1145 (2d Cir. 1992)); *see also McPherson v. Greiner*, No. 02 Civ 2726, 2003 WL 22405449, at *22, n.53

---

[17]As a reminder, grounds two and three challenged aspects of the trial court's jury instructions, while ground four contested the propriety of the petitioner's pre-trial lineup.

(S.D.N.Y. Oct. 22, 2003) (Peck, Mag. J.) (citing additional cases). Habeas relief is therefore unavailable on the ground of ineffective assistance since the underlying claims themselves are meritless.

The petitioner presses another ineffective assistance argument, however. Specifically, the petitioner contends that he had, on some level, been deprived the right to counsel or, at the very least, the right to effective assistance of counsel when his application for appointment of an attorney for his direct appeal pursuant to section 35-b of the Judiciary Law had been "improperly placed" before the appellate division rather than the court of appeals, the forum designated under subsection two of the provision. This claim is meritless.

In a nutshell, section 35-b of the Judiciary Law affords criminal defendants facing the prospect of a death sentence (now technically abolished in New York State), i.e., those who are charged with first degree murder under section 125.27 of the penal law or who face the reasonable likelihood of such a charge, the right to court-appointed counsel. *See* N.Y. Judiciary Law § 35-b(1). Subsection two of the provision sets forth the procedure by which counsel is appointed in such a situation, and designates that, subject to certain exceptions, appointments be made by either the "trial court" or "the court of appeals." *Id.* § 35-b(2).

Even assuming that the appellate division's consideration of petitioner's application for appointment of counsel under section 35-b of the Judiciary Law somehow ran afoul of subsection two's procedural requirements, the petitioner has not shown in this proceeding how that procedural defect caused the attorney ultimately assigned to him to render ineffective assistance. Indeed, the petitioner has failed to make any factual allegations in support of such a

claim. As indicated above, *see supra* p. 25, this lack of factual support is fatal.[18] *See Angel v. Garvin*, No. 98 CIV 5384, 2001 WL 327150, at *8 (S.D.N.Y. Apr. 3, 2001) ("A habeas petition may be denied 'where the allegations are insufficient in law, undisputed, immaterial, vague, conclusory, palpably false, or patently frivolous.' ") (quoting *United States v. Malcolm*, 432 F.2d 809, 812 (2d Cir. 1970)) (additional citations omitted).

In any event, the issue here, at most, concerns a state law violation, which is not cognizable on habeas review. *See Estelle*, 502 U.S. at 68 ("[F]ederal habeas corpus relief does not lie for errors of state law."). The petitioner has not presented any evidence that the allegedly improper assignment of counsel denied him due process; nor is there any suggestion as to how such a deprivation may have occurred. Habeas relief is therefore unwarranted.

## CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that the petition be DENIED in all respects. Since the petitioner has failed to make a substantial showing of the denial of a constitutional right, the court also recommends that a certificate of appealability not issue. *See* 28 U.S.C. § 2253(c)(2).

---

[18]While the petitioner did raise a similar ineffective assistance claim at the state level with supporting factual allegations, the appellate division rejected it as meritless, citing the Supreme Court case of *Jones v. Barnes*, 463 U.S. at 745. *See People v. Hall*, 786 N.Y.S.2d 312 (2004). Courts in this circuit consider *Jones*, which established the touchstone for gauging the constitutional effectiveness of appellate counsel, "clearly established Federal law, as determined by the Supreme Court of the United States, " 28 U.S.C. § 2254(d). *See Angarita v. Goord*, No. 01-CV-2439, 2003 WL 23185767, at *11 (E.D.N.Y. Nov. 7, 2003) (Weinstein, J.); *Gssime v. Goord*, No. No. 02-CV-4602, 2003 WL 23185772, at *11 (E.D.N.Y. Oct. 29, 2003) (Weinstein, J.); *see also Aparacio*, 269 F.3d at 96 n.8 ("It is beyond cavil that the *Strickland* standard qualifies as 'clearly established Federal law.' ") (citation omitted). Therefore, the Appellate Division's ruling must stand unless it was "unreasonable." *See* 28 U.S.C. § 2254(d); *Rosa*, 396 F.3d at 219; *Clark*, 214 F.3d at 322; *Angari*, 2003 WL 23185767, at *11. The petitioner has not demonstrated, in filings with this court or the state courts, that he has met this high standard. Nor does the court find the Appellate Division's application of *Jones v. Barnes* unreasonable within the meaning of section 2254.

\*      \*      \*      \*      \*      \*      \*

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court with a copy to the undersigned within 10 days of receipt of this report. ***Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation.*** 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), & 72(b); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298 (2d Cir. 1992), *cert. denied*, 113 S. Ct. 825 (1992); *Small v. Secretary of Health and Human Serv.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

*Viktor V. Pohorelsky*

VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated: Brooklyn, New York
        December 15, 2006